IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. |
| | ) | 3:18-cr-408-RAH-JTA |
| DEMETRIS DUANE CLARK | ) | (WO) |
| | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the court on Defendant Demetris Duane Clark's motion to suppress (Doc. No. 17) and the government's response in opposition thereto (Doc. No. 28). The court held an evidentiary hearing on the motion on July 29, 2020. (Doc. No. 54.) After due consideration of the parties' arguments, evidence and applicable law, the court concludes that the motion to suppress is due to be denied.

### I.  PROCEDURAL HISTORY

Defendant Demetris Duane Clark ("Clark") is charged with possession with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). (Doc. No. 1.)  Clark seeks suppression of the methamphetamine discovered in a bookbag in his possession during a warrantless search of his vehicle.  Clark also seeks to suppress statements he made on the day of his arrest and recordings of his jail telephone calls made during his detention in the days following arrest.  The United States responded to the motion asserting that the detention of Clark and subsequent search of his vehicle were lawful.  This matter is ripe for disposition.

## II.  FINDINGS OF FACT

The testimony from the evidentiary hearing demonstrates that on February 7, 2017, Officer Benjamin Carswell ("Carswell") was employed as a narcotics investigator and canine handler with the Opelika Police Department.[1]  Around 11:00 a.m., Officer Carswell heard a police radio broadcast from Officer Cruze[2] alerting officers to a search for a male suspect near Interstate 85.  Officer Carswell testified that Officer Cruze completed the broadcast because he saw the man flee on foot across the interstate while he was investigating a burglary.  Officer Cruze described the suspect as a Black male, approximately six feet tall, wearing a black hat, black shirt and tan or gray pants.  Using a map of the area,[3] Officer Carswell identified a ministorage business on the south side of the interstate where the burglary occurred and the area of the suspect's flight towards the Toomer Court apartments operated by the Opelika Housing Authority on the north side.  Officer Carswell and two other narcotics detectives, Detectives Rogers and Garrett,[4] responded in separate vehicles to the Toomer Court area to locate the suspect.  Upon his arrival in the area, Detective Rogers notified the others that he observed a silver passenger car with a Georgia license plate driven by a Black male.  The vehicle was traveling from

---

[1] Officer Carswell was the sole witness at the evidentiary hearing.  (Doc. No. 54, Tr.)

[2] The first name of Officer Cruze is unknown to the court.

[3] The map was entered into evidence as Government Exhibit 2.  (Doc. No. 54, Tr. at 5.)

[4] The first names of Detectives Rogers and Garrett are unknown to the court.

Dogwood Avenue, a dead-end street, toward Hurst Street and W.E. Morton Avenue, which is where the officers believed the suspect to have fled.

When Officer Carswell heard the alert from Detective Rogers, he drove toward the intersection of Hurst Street and W.E. Morton Avenue and saw a silver car approaching W.E. Morton Avenue from a dead-end side street. Officer Carswell turned his vehicle, which was an unmarked law enforcement vehicle,[5] around and briefly stopped on a nearby hill where he observed the silver car as it entered onto W.E. Morton Avenue. Officer Carswell observed that the silver car displayed a Georgia license plate and began to follow the silver car after it turned left onto W.E. Morton Avenue.[6] The silver car then turned right onto Antioch Circle into another Opelika Housing Authority property. Immediately after turning onto Antioch Circle, the silver car turned left into an available parking space.

After the silver car parked, Officer Carswell parked his vehicle close to the rear of the silver car, without blocking it, and activated his vehicle lights. Officer Carswell testified that he intended to make contact with the occupants of the silver car to determine if they were connected to the burglary. Officer Carswell exited his vehicle and was approximately four feet from the silver car, when the driver, Demetris Duane Clark ("Clark"), exited the silver car. Officer Carswell testified that he "smelled a strong immediate odor of marijuana" when Clark opened his car door. (Doc. No. 54, Tr. at 17-

---

[5] Although the vehicle did not display any markings identifying it as a law enforcement vehicle, Officer Carswell testified that his vehicle was a white Dodge Charger with a brush guard, antennas, license plate readers, and lights. (Doc. No. 54, Tr. at 17-18.)

[6] Officer Carswell's dashboard camera system was in operation during this event and the video was admitted into evidence as Government Exhibit 1. (Doc. No. 54, Tr. at 25-26.) The silver car at issue is first seen in the video at 1:20 into the recording.

19, 48-49.)  Officer Carswell directed Clark to "hop back in the car right quick, hop back in the car right quick."[7]  (Gov. Ex. 1 at 2:04.)  Clark complied, returned to his car and left his car door ajar.  In response to an inaudible inquiry from Clark, Officer Carswell responded, "I'll explain it to you in a second."  (*Id*. at 2:08.)  Officer Carswell completed a communication with other officers on his radio and then, after greeting Clark and his female passenger, asked for their identification.  (*Id* at 2:14.)  Clark asked Officer Carswell, "what's going on?"  (*Id*. at 2:25.)  Officer Carswell replied that he "was investigating a burglary complaint over here but when you opened your door I smelled marijuana. Y'all got a little bit of weed in here?"  (*Id*. at 2:27.)  Clark replied affirmatively and Officer Carswell inquired further, "how much you got in here man? . . . Just be straight up with me." (*Id.* at 2:35.)  Clark responded that he had "a little blunt" and handed Officer Carswell a small bag of marijuana when Officer Carswell asked to see it. (*Id*. at 2:37, Doc. No. 54, Tr. at 20.)  Unprompted, Clark said that he just got out of jail, Officer Carswell asked him what he was in jail for and Clark responded, "same old thing."  (*Id*. at 2:44.)  Clark also told Officer Carswell that he was just pulling in to visit his friend Marcus but that he did not know Marcus's last name.  (*Id*. at 2:51.)

Officer Carswell asked Clark whether he had anything else in the car including guns before telling Clark to hand him a bookbag that he observed in the backseat of Clark's car.  (*Id*. at 3:02; Doc. No. 54, Tr. at 20, 33-34.)  Officer Carswell testified there was no other

---

[7] Officer Carswell parked his vehicle so that the dashboard camera was aimed at the rear of Clark's vehicle.  Though the audio is quite clear, both men are out of camera range for the duration of the encounter.

contraband in Clark's vehicle in plain view but that he was curious about the contents of the bookbag for two reasons: (1) he wanted to make sure that it did not contain weapons and (2) his experience and training led him to believe that the amount of marijuana Clark surrendered could not have produced the strong odor of marijuana coming from the car. Clark complied and provided the bookbag to Officer Carswell.[8]  Officer Carswell can be heard on the video unzipping the bookbag and shortly thereafter instructing Clark to give Officer Carswell his hands without exiting the car.  (Gov. Ex. 1 at 3:32.)  Officer Carswell testified that he searched the main compartment of the book bag and observed a large amount of marijuana.[9]  Officer Carswell placed Clark in handcuffs and Clark is heard saying, "you gotta be kidding me" as he complied.  (*Id.* at 3:36; Doc. No. 54, Tr. at 22.) After Clark is placed in handcuffs, he tells Officer Carswell that there was no reason to pull him over.  Officer Carswell explained to Clark that he did not pull him over because he did not block Clark's car and did not use his blue lights to effectuate a stop.[10]  (*Id.* at 3:53.)

---

[8] Officer Carswell testified that Clark did not provide consent to search.

[9] (*See* Doc. No. 54 at 22.) Officer Carswell recovered two large plastic bags of marijuana, methamphetamine, crack cocaine, powder cocaine, a smaller plastic bag of marijuana, sandwich bags, a spoon, and two digital scales from the bookbag.  (Doc. No. 54, Tr. at 23-24.)  These items can be seen on the video.  (Gov. Ex. 1 at 5:36-6:26.)

[10] Officer Carswell testified that the silver car had not violated any traffic laws and he suspected the car could be associated with the subject that was seen fleeing the area by the burglary location. He also testified that the silver car aroused his suspicion because of the Georgia tag, the absence of a nearby interstate exit that provided access to the area, and the fact that it was seen coming from the general area where the suspect on foot was last seen.  Further, Officer Carswell was suspicious of the silver car because it made several turns in dead-end streets and he suspected the driver was possibly trying to avoid police.  Officer Carswell testified that he found the combination of circumstances odd and found suspicious that the car parked in a location where only Alabama residents could legally reside.

Clark and his female passenger were taken to the Opelika Police Department and Clark claimed ownership of all the drugs discovered.

Officer Carswell testified that he did not remember what Clark was wearing, he could not have determined whether Clark's clothing matched that of the suspect while Clark was driving, and he conceded that the only part of the description Clark actually matched of the suspect at issue was that of a Black male.  He also testified that he considered Clark detained and not free to leave at the moment he told Clark to remain in the car and that if Clark had tried to leave he would have charged Clark with attempting to elude an officer.[11]

### III.   DISCUSSION

A. <u>Clark's Motion to Suppress</u>

Clark challenges the seizure, questioning and search of his vehicle by Officer Carswell under the Fourth and Fifth Amendments to the United States Constitution.  (Doc. No. 17.)  He asserts that Officer Carswell lacked probable cause and reasonable suspicion to stop and seize him.  (*Id*. at 4-5.)  He acknowledges that the Fourth Amendment permits consensual encounters between law enforcement and citizens but asserts that his entire encounter with Officer Carswell was a seizure made possible only by Officer Carswell's show of force which compelled Clark to comply.  (*Id*. at 6-7.)  Clark also contends that he did not freely consent to Officer Carswell's warrantless search of his bag.  (*Id*. at 10-12.) Clark urges the court to look to the totality of the circumstances to find that Officer

---

[11] Fleeing from or attempting to elude a law enforcement officer is a misdemeanor where the flight does not result in death or injury to a third party.  § 13A-10-52, Ala. Code (1975).

Carswell's manner and conduct during the encounter violated the Fourth Amendment because it left Clark with no choice in whether to surrender the bag for inspection.

Further, Clark seeks suppression of his statements made in response to Officer Carswell's questions during the encounter as violative of the Fifth Amendment because he was in custody for *Miranda*[12] purposes. The specific statement at issue is Clark's response that he had "a little blunt" when asked by Officer Carswell if he possessed marijuana. (*Id.* at 8, 10.) Relying on Officer Carswell's testimony that he would have chased Clark and charged him criminally if he had attempted to end the encounter, Clark contends he was not free to leave and was in custody for *Miranda* purposes. (Doc. No. 54, Tr. at 56, 61.)

Finally, Clark seeks, absent argument in his motion, suppression of the recordings of his jail telephone calls in the days following his arrest as the fruit of an unlawful seizure. (*Id.* at 12.)

B. <u>Government's Response</u>

The government responds that Clark was not subjected to a traffic stop but was detained upon Officer Carswell's reasonable suspicion that he may have information related to a burglary investigation. (Doc. No. 28 at 2-4.) The government submits that the marijuana smell provided probable cause to search the vehicle under the automobile exception to the Fourth Amendment warrant requirement. (*Id.* at 5.) The government relies on Officer Carswell's suspicions as reasonable suspicion to develop Clark as a suspect in the burglary investigation. (Doc. No. 54, Tr. at 50-52.) The government also

---

[12] *Miranda v. Arizona,* 384 U.S. 436, 445 (1966).

argues Officer Carswell's detection of the scent of marijuana as a source of reasonable suspicion for a *Terry* detention.  (*Id*. at 52.)    Further, in response to Clark's Fifth Amendment challenge, the government denies that Officer Carswell's questions triggered *Miranda* protections because Clark was not restrained in a manner consistent with a formal arrest.  (*Id*. at 4-5.)

    C.  <u>Governing Legal Principles</u>

    1.  Fourth Amendment

The law is well-settled.  "The Fourth Amendment guarantees '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  *Whren v. United States*, 517 U.S. 806, 809 (1996).  The Eleventh Circuit has explained that there are three types of encounters between police and citizens "for purposes of . . . Fourth Amendment analysis: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests."  *United States v. Perez*, 443 F.3d 772, 777 (11th Cir. 2006) (citation omitted).  In regard to the first type of encounter, "[c]onsensual encounters between police officers and citizens do not trigger Fourth Amendment safeguards."   *United States v. Santibanez Garcia*, 132 F. Supp. 2d 1338, 1341 (M.D. Fla. 2000) (footnote omitted).

> Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.  Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage – provided they do not induce cooperation by coercive means.

*Perez*, 443 F.3d at 777-78 (citing *United States v. Drayton*, 536 U.S. 194, 200-01 (2002));

*see also Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("[M]ere police questioning does not

constitute a seizure.").

For the purposes of Fourth Amendment analysis, a seizure occurs "[o]nly when the

officer, by means of physical force or show of authority, has in some way restrained the

liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). "The purpose of the Fourth

Amendment is not to eliminate all contact between the police and the citizenry, but to

prevent arbitrary and oppressive interference by enforcement officials with the privacy and

personal security of individuals." *United States v. Mendenhall*, 446 U.S. 544, 553-54

(1980) (quotations and citation omitted). "If a reasonable person would feel free to

terminate the encounter, then he or she has not been seized." *Miller v. Harget*, 458 F.3d

1251, 1257 (11th Cir. 2006) (citation omitted).

> . . . [A] person has been "seized" within the meaning of the Fourth
> Amendment only if, in view of all of the circumstances surrounding the
> incident, a reasonable person would have believed that he was not free to
> leave. Examples of circumstances that might indicate a seizure, even where
> the person did not attempt to leave, would be the threatening presence of
> several officers, the display of a weapon by an officer, some physical
> touching of the person of the citizen, or the use of language or tone of voice
> indicating that compliance with the officer's request might be compelled. . .
> . In the absence of some such evidence, otherwise inoffensive contact
> between a member of the public and the police cannot, as a matter of law,
> amount to a seizure of that person.

*Mendenhall*, 446 U.S. at 553-54 (internal citations omitted).

Once the encounter rises to the level of a brief seizure or investigatory detention,

the officer must have reasonable, articulable suspicion that the individual has engaged in

or is about to engage in criminal activity. *Terry*, 392 U.S. at 24; *United States v. Tapia*,

912 F.2d 1367, 1370 (11th Cir. 1990) ("[E]ven in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity.")  "A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing."  *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000).  Reasonable suspicion is determined from the totality of the circumstances, *United States v. Sokolow*, 490 U.S. 1, 8 (1989), and requires that the officer point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the investigative stop.  *Terry*, 392 U.S. at 21; *see also United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999).  "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop."  *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007); *see also United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004).  For a seizure to be valid, it must be "justified at its inception."  *May v. City of Nahunta, Ga*., 846 F.3d 1320, 1328 (11th Cir. 2017) (quoting *Terry v. Ohi*o, 392 U.S. 1, 20 (1968)).  To determine the lawfulness of an officer's actions, the court considers only those "facts available to the officer at the moment of the seizure." *United States v. Mestre*, 362 F. Supp. 3d 1175, 1178 (M.D. Ala. 2019) (quoting *Terry*, 392 U.S. at 21-22).

2.  Fifth Amendment

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself . . . ."  U.S. Const., amend. V.  In *Miranda*,

the Supreme Court expanded the Fifth Amendment right against self-incrimination to "individuals subjected to custodial interrogation by the police." *New York v. Quarles*, 467 U.S. 649, 654 (1984). *Miranda* requires that a suspect subjected to custodial interrogation be "warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 479. *See United States v. Newsome,* 475 F.3d 1221, 1224 (11th Cir. 2007) ("*Miranda v. Arizona,* 384 U.S. 436, 445 (1966) established that custodial interrogation cannot occur before a suspect is warned of his or her rights against self-incrimination."). An "interrogation" for *Miranda* purposes is defined as "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "[I]nterrogation in certain custodial circumstances is inherently coercive and . . . statements made under those circumstances are inadmissible unless the suspect is specifically informed of his *Miranda* rights and freely decides to forgo those rights." *Quarles*, 467 U.S. at 654 (footnote omitted). "Before a suspect's uncounseled incriminating statements made during custodial interrogation may be admitted, the prosecution must show 'that the suspect made a voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel.'" *United States v. Lall*, 607 F.3d 1277, 1282 (11th Cir. 2010) (quoting *United States v. Beale*, 921 F.2d 1412, 1434 (11th Cir. 1991)).

But "[w]hile statements made in violation of *Miranda* must generally be suppressed, failure to give *Miranda* warnings does not require suppression of physical fruits of a suspect's unwarned but voluntary statements." *United States v. Robinson*, 760 F. App'x 762, 764 (11th Cir. 2019) (citing *United States v. Patane*, 542 U.S. 630, 633–34 (2004) (plurality opinion)). *See United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007) ("*Miranda* does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement."); *also United States v. Manta-Carillo,* 491 F. App'x 125, 127 (11th Cir. 2012) ("[T]he Self–Incrimination Clause in the Fifth Amendment does not bar the admission of physical evidence that is the fruit of an unwarned but voluntary statement.") (citation omitted). Thus, unwarned statements made absent *Miranda* cannot be admitted into evidence at trial but physical evidence discovered from unwarned statements does not suffer the same fate.

D. <u>Analysis of Clark's Motion to Suppress</u>

1. Fourth Amendment Claims

A. The Seizure Was Based on Reasonable Suspicion to Investigate Illegal Activity.

Clark invokes well-settled precedents which govern interactions between law enforcement and citizenry to attack Officer Carswell's approach to his vehicle and immediate detention. The government contends that a traffic stop did not occur. The court agrees with the government.

"A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009). "Generally, the traffic

stop involves an encounter that arises when a law enforcement officer stops a vehicle travelling on the roadways, pulls the car over, and may direct the driver and any passenger to exit the car." *United States v. Gibbs*, 917 F.3d 1289, 1296 (11th Cir. 2019). Here, there is no dispute that Clark did not violate a traffic regulation. The evidence before the court establishes that Clark voluntarily stopped and parked his car on Antioch Circle, ostensibly to visit his friend Marcus. (Gov. Ex. 1 at 2:51.) There is no evidence that Officer Carswell employed his lights or a siren to effectuate a traffic stop of Clark's car. [13] Indeed, Officer Carswell testified that he did not activate his vehicle lights until after Clark pulled his car into the parking space on Antioch Circle. (Doc. No. 54, Tr. at 17.) Therefore, the evidence establishes that the encounter between Officer Carswell and Clark commenced as a police-citizen exchange involving no coercion or detention. *See Perez*, 44 F.3d at 777.

Given that Officer Carswell did not "stop" Clark, the court must determine whether he violated the Fourth Amendment when he approached and quickly seized Clark. "There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets." *United States v. Jordan*, 636 F.3d 1181, 1186 (11th Cir. 2011) (quoting *United States v. Franklin*, 323 F.3d 1298, 1301 (11th Cir. 2003)). Officer Carswell testified that he smelled marijuana when Clark opened his car door and initiated

---

[13] Officer Carswell's stated reasons for being suspicious of Clark may not support a finding of reasonable, articulable suspicion for an investigatory stop if the government fully placed reliance thereon, *i.e.*, a car with Georgia plates where no interstate entrance was nearby (in a location very near to the Georgia state line), several turns in a short period of time onto and off of dead-end streets, noted while in pursuit of a suspect last seen on foot earlier, without any match to the suspect beyond gender and race. The government relies in part on Officer Carswell's cumulative suspicions as grounds to detain Clark. (Doc. No. 28 at 2-4; Doc. No. 54, Tr. at 50-52.) Fortunately for the government, it alternatively relied upon Officer Carswell's detection of the smell of marijuana. (Doc. No. 54, Tr. at 52.)

detention by immediately telling Clark to get back into his car.  (Doc. No. 54, Tr. at 19, 44.)  Officer Carswell was about to question Clark, which is permissible under the Fourth Amendment, when he smelled the marijuana.  *Jordan, id*.  The uncoerced police-citizen exchange had scarcely begun when it became an investigatory detention supported by the reasonable, articulable suspicion that Clark had engaged in criminal activity based upon Officer Carswell's detection of marijuana.  *Terry*, 392 U.S. at 24; *United States v. Tapia*, 912 F.2d at 1370 ("[E]ven in the absence of probable cause, police may stop persons and detain them briefly in order to investigate a reasonable suspicion that such persons are involved in criminal activity.")

It is not disputed that Officer Carswell detained Clark by telling him to get back into his car.  (Doc. No. 54, Tr. at 44.)   Officer Carswell testified that upon smelling the marijuana, his investigative purpose shifted from the burglary to the presence of marijuana. (*Id*., Tr. at 17, 19.)  *See United States v. White*, 593 F.3d 1199, 1203 (11th Cir. 2010) (stating that "the smell of marijuana alone may provide a basis for reasonable suspicion for further investigation of possible criminal conduct . . . .").  Officer Carswell was acting within the law when he approached Clark for a consensual encounter pursuant to *Jordan* and remained within the law when the scent of marijuana altered the encounter as permitted by *White*.  The scent of marijuana gave Officer Carswell authority to investigate based upon his objective belief that criminal activity was afoot.  *See White*, 593 F.3d at 1202 (quoting *United States v. Lindsey*, 482 F.3d 1285, 1290 (11th Cir. 2007)) (law enforcement officers may "briefly detain individuals for purposes of investigating a crime if they have

a reasonable, articulable suspicion based on objective facts that the individual has engaged in, or is about to engage in, criminal activity).

Clark submits that a review of the circumstances created by Officer Carswell support a finding that their encounter was a seizure from its inception.  He cites Officer Carswell's parking very near him "in a manner consistent with a traffic stop" and verbal command for him to get back into his car.  (Doc. No. 17 at 7.)  Clark concedes that Officer Carswell did not block his car, but points to the officer's authoritative manner and his own helplessness in a situation where he would have risked additional charges if he had ignored Officer Carswell and driven away.  (*Id.*; Doc. No 54, Tr. at 44-45.)  When, at the end of the video's depiction of the interaction between Officer Carswell and Clark, Clark told Officer Carswell that he had no basis for stopping him Officer Carswell retorted that he had not used blue lights to initiate a stop and had not blocked Clark's exit.  Officer Carswell was correct.  This issue turns on Clark's apparent decision to park his car and the fact that the smell of marijuana altered both Officer Carswell's investigatory goals and his ability to detain Clark based on the apparent presence of illegal narcotics.  Accordingly, Officer Carswell's conversion of the encounter from a police-citizen exchange to an investigatory detention did not violate the Fourth Amendment.

### B. The Search of Clark's Vehicle Was Permissible Under the Automobile Exception to the Fourth Amendment Warrant Requirement.

Clark asserts that Officer Carswell's warrantless search of his bookbag was per se unreasonable and violated the Fourth Amendment.  (Doc. No. 17 at 10.)  "A search conducted without a search warrant issued upon probable cause is per se unreasonable . . .

subject only to a few specifically established and well-delineated exceptions." *Schneckloth*

*v. Bustamonte*, 412 U.S. 218, 219 (1973).   Among those exceptions, Clark focuses on

voluntary consent and the circumstances showing that he did not consent to a search.   (Doc.

No. 17 at 11-12.)   He cites Officer Carswell's immediate demand for identification,

questions about whether and how much marijuana he possessed, and the direction that he

give the bag to him as opposed to asking politely if he could inspect it.   (*Id*.)

The automobile exception to the Fourth Amendment warrant requirement governs

this issue.   "Under the automobile exception to the warrant requirement, '[t]he police may

search an automobile and the containers within it where they have probable cause to believe

contraband or evidence is contained.' "   *United States v. Delva*, 922 F.3d 1228, 1243 (11th

Cir. 2019) (quoting *California v. Acevedo*, 500 U.S. 565, 580 (1991)).   A warrantless search

of an automobile is constitutional where (1) the automobile is readily mobile, and (2) there

is probable cause to believe that it contains contraband or evidence of a crime.   *United*

*States v. Lanzon*, 639 F.3d 1293, 1299-1300 (11th Cir. 2011).   *See also United States v.*

*Tamari*, 454 F.3d 1259, 1261-62 (11th Cir. 2006) (holding a warrantless search permissible

when "there is a fair probability that contraband or evidence of a crime will be found in the

vehicle" under the totality of the circumstances).

Here, the warrantless search of the bookbag – a container located within Clark's

automobile – did not run afoul of the Fourth Amendment.   First, Clark's vehicle was readily

mobile as evidenced by Officer Carswell following the vehicle from one street to the next

while it was driven.   Second, Officer Carswell had probable cause to believe a quantity of

marijuana capable of producing the strong odor he detected was inside the car because he

smelled it when Clark opened the door to his car.  (Doc. No. 54, Tr. at 21.)  *See Delva*, 922 F.3d at 1243; *United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) (" . . . the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search."); *United States v. Smith*, 694 F. Supp. 2d 1242, 1250 (M.D. Ala. 2009) (noting that, under *Lueck*, the detection of the smell of marijuana provides probable cause to conduct a search.").   Accordingly, Officer Carswell's warrantless search of Clark's bookbag was permissible and did not violate the Fourth Amendment.

        2.   Fifth Amendment Claim

    Clark asserts that his Fifth Amendment right against self-incrimination was violated when Officer Carswell inquired about the marijuana without first providing *Miranda* warnings.  (Doc. No. 17 at 8.)  He argues that Officer Carswell's failure to advise him of his rights requires the suppression of his admission that he had a "little blunt" because he was questioned under circumstances where "a reasonable man in his position would feel a restraint on his freedom of movement to such extent that he would not feel free to leave." (*Id*. at 8-9) (quoting *United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006))).

    "The trigger for *Miranda* protections is custody.  A person is in custody for purposes of *Miranda* if, under the totality of the circumstances, a reasonable person would believe the restraint on his freedom of movement has been curtailed to the degree associated with a formal arrest."  *United States v. Carson*, 520 F. App'x 874, 886 (11th Cir. 2013) (citing *United States v. Lall*, 607 F.3d 1277, 1284 (11th Cir. 2010)).  "The test is objective:  the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant.  Under the objective standard, the reasonable

person from whose perspective 'custody' is defined is a reasonable innocent person." *Street*, 472 F.3d. at 1309 (quoting *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996)).  Factors considered when applying the objective standard are whether the officer brandished a weapon, touched the defendant, or used language or a tone that indicated that compliance could be compelled and the location and length of the detention.  *Carson*, 520 F. App'x at 886 (citing *United States v. Luna-Encinas*, 603 F.3d 876, 881 (11th Cir. 2010)); *Street*, *id*.

The government does not dispute that Officer Carswell "interrogated" Clark within the context of *Miranda* when he inquired about his possession of marijuana.  Rather, the government argues Clark was not in "custody" for *Miranda* purposes.  (Doc. No. 28 at 4-5.)  The court agrees.

The evidence before the court establishes that a reasonable person in this circumstance would not believe the restraint on his freedom of movement had been curtailed to the degree associated with a formal arrest.  Officer Carswell did not brandish a weapon, touch Clark, or use inappropriate language during the detention.  Officer Carswell's tone was commanding but not unprofessional.  The location was public, in daylight, and the entire encounter between the men lasted less than five minutes.  In addition, Clark was not handcuffed, was seated in the driver seat of his own vehicle with the door ajar, and had a passenger in the vehicle.  Hence, the totality of circumstances do not support a finding of "custody" within the context of *Miranda* in this case.  *See United States v. Deason*, 965 F.3d 1252, 1261 (11th Cir. 2020) (quoting *United States v. Muegge*, 2225 F.3d 1267, 1270 (11th Cir. 2000)) (noting even though a " 'coercive environment' [

] exists in virtually every interview by a police officer of a crime suspect," a custodial situation is not automatically created).

Further, "[p]olice are not generally required to give *Miranda* warnings during ordinary *Terry* stops." *United States v. Viezca*, 555 F. Supp. 2d 1254, 1263-64 (M.D. Ala. 2008). As the Eleventh Circuit has noted "a suspect who is detained during a *Terry* stop is not free to leave from the beginning of the stop until it ends. If we applied the general *Miranda* custodial test literally to *Terry* stops, the result would be that *Miranda* warnings are required before any questioning could occur during any *Terry* stop." *Acosta*, 363 F.3d at 1148. Notwithstanding Officer Carswell's subjective belief that he would be entitled to file criminal charges against Clark if he had departed during the *Terry* stop, his belief does not govern this court's objective analysis. *See Street*, 472 F.3d. at 1309. Under the objective standard, the reasonable person from whose perspective "custody" is defined is a reasonable innocent person. As noted above, Clark was outdoors, in a public place where several witnesses were present. A reasonable innocent person would not have felt that he was utterly at the mercy of the police, away from the protection of any public scrutiny, such that he must confess to a crime. *See United States v. Partin*, No. 2:12-cr-188-MHT, 2013 WL 6388592, at *5 (M.D. Ala. Dec. 6, 2013) (citing *Acosta*, 363 F.3d at 1153).

Accordingly, the court concludes that the facts in this case do not establish that Clark was in custody for purposes of *Miranda* when Officer Carswell questioned him. Clark's statement is therefore admissible against him at trial.[14]

---

[14] The prayer for relief in Clark's motion requests, without any argument, that incriminating statements in recordings of his jail phone calls made during the days after his arrest be suppressed.

## IV.  CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion to suppress (Doc. No. 17) be DENIED.  It is further

ORDERED that the parties shall file any objections to the said Recommendation not later than **September 21, 2020.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file a written objection to the Magistrate Judge's findings and § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the District Court's order based on unobjected-to-factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 4th day of September, 2020.

/s/ Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE

---

(Doc. No. 17 at 12.)  Because the court rejects Clark's identified claims under the Fourth and Fifth Amendments, it should reject this unidentified claim as well.